WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GEICO General Insurance Company,<br><br>                    Plaintiff,<br><br>v.<br><br>Gage Tucker,<br><br>                    Defendant. | No. CV-13-02072-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss. (Doc. 7.)[1] For the reasons explained below, that Motion is denied.

## BACKGROUND

In this action under the Federal Declaratory Judgment Act ("FDJA"), GEICO General Insurance Company ("GEICO") seeks a determination of its coverage as to Defendant Gage Tucker. Tucker was a passenger in a truck that was insured with a GEICO policy by Tucker's father. Tucker made a third-party claim against the driver of the truck and received the full $100,000 bodily injury coverage under his father's policy on the truck. Because the damages from his injuries allegedly exceed the $100,000 paid, Tucker also seeks payment under his Underinsured Motorist ("UIM") policy with GEICO on another vehicle. The dispute is over whether the coverage under these two policies may be stacked.

---

[1] The request for oral argument is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

In his Motion, Tucker argues three theories for dismissal. First, this Court should choose not to exercise its discretionary authority under the FDJA. Second, this Court should apply non-mutual collateral estoppel. Third, dismissal is also proper on the merits.

## DISCUSSION

### I. Discretionary Dismissal under the FDJA

#### A. The *Brillhart* Standard

The FDJA states that "[i]n a case of actual controversy within its jurisdiction [with noted exceptions] . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As the Ninth Circuit has explained, the FDJA "was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Amer. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995), *overruled on other grounds by Gov't. Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998) (en banc) (stating that the FDJA is "deliberately cast in terms of permissive, rather than mandatory, authority" (internal citation omitted)).

When determining whether to abstain from an FDJA action, the Ninth Circuit considers the factors set out by the Supreme Court in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942). "The district court [1] should avoid needless determination of state law issues; [2] it should discourage litigants from filing declaratory actions as a means of forum shopping; and [3] it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225 ("The *Brillhart* factors remain the philosophic touchstone for the district court."). The *Brillhart* court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties" and that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." 316 U.S. at 495.

The *Brillhart* factors are not exhaustive, and courts may also consider: (1) whether the declaratory action will settle all aspects of the controversy; (2) whether the action will serve a useful purpose in clarifying the legal relations at issue; (3) whether the action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; (4) whether the use of the action will result in entanglement between the federal and state court systems; (5) the convenience to the parties; and (6) the availability and relative convenience of other remedies. *Dizol*, 133 F.3d at 1225 n.5.

### B. The *Brillhart* Factors Do Not Favor Dismissal

#### 1. There is No Needless Determination of State Law Issues

When a FDJA action is filed during the pendency of a state action involving the same parties and issues there is a presumption but not a requirement that the district court should decline jurisdiction and allow the entire suit to be determined in state court. *Dizol*, 133 F.3d at 1225. Some cases have emphasized that insurance coverage is primarily an issue of state law, making comity concerns in favor of a state court determination "particularly weighty in insurance cases." *Emp'rs Reinsurance Corp. v. Karussos*, 65 F.3d 796, 798–99 (9th Cir. 1995), *overruled in part on other grounds by Dizol*, 133 F.3d at 1227 (internal citation omitted). "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Dizol*, 133 F.3d at 1225. Most of the Ninth Circuit cases approving a dismissal of the federal action involved parallel state proceedings, but the court has noted that "the absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice." *Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754 (9th Cir. 1996) *overruled on other grounds by Dizol*, 133 F.3d 1220.

Here, GEICO seeks a judgment as to its rights and obligations in relation to Tucker and the stacking of UIM coverage with the already paid bodily injury coverage. If this Court proceeds with this action, it will be required to determine issues of state law when interpreting the policy. This is demonstrated by the arguments in the parties' briefs, which argue differing interpretation of the Arizona statute regulating when an insurance

company may exclude stacked coverage. Ariz. Rev. Stat. Ann. § 20-250.01(H).

The first *Brillhart* factor is not simply whether the case involves an interpretation of state law, but whether it needlessly does so. A determination is often found to be needless because a parallel proceeding in state court will resolve the issue. Here, there is no active parallel proceeding that will determine the issue at hand. Instead, Tucker argues that a decision is needless because a state court has already addressed the interpretation of the same language from GEICO's contract. (*See* Doc. 7-1.) Tucker notes that while the Arizona Court of Appeals case is unpublished that Court indicated that it was unpublished because it was a straightforward application of the Arizona Supreme Court's decision in *American Family Insurance Co. v. Sharp*, 229 Ariz. 487, 277 P.3d. 192 (2012). (Doc. 7-6.) GEICO, apparently, disagrees and argues that *Sharp* does not change a series of Arizona cases that support its position. (Doc. 11 at 10–15.)

Although the lack of a pending state court case here is not dispositive, it does weigh against the Motion to Dismiss. The parties are in dispute over the applicable case law. Therefore, a determination in this Court would not be needless because there is a controversy between the parties that will not be resolved by any other pending proceedings. Thus, the first *Brillhart* factor does not favor dismissal.

### 2. Forum Shopping

"[F]ederal courts should generally decline to entertain reactive declaratory actions." *Dizol*, 133 F.3d at 1225. In *Continental Casualty Co. v. Robsac Industries*, an insurer filed a declaratory judgment action in federal court "during the pendency of a non-removable state court action presenting the same issues of state law." 947 F.2d 1367, 1372 (9th Cir. 1991), *overruled in part on other grounds by Dizol*, 133 F.3d at 1220. The court held that the insurer did so merely to obtain "a tactical advantage from litigating in a federal forum" and that the "defensive or reactive" nature of the insurer's action warranted dismissal. *Id.* at 1371. The Court noted that an insurer's action might also be considered "reactive" litigation even if it occurs before the other party files a suit if the insurer rushes to file before the insured can file a non-removable state action. *Id.* at 132.

1   However, another case noted that there is no reason to stigmatize an insurance company's
2   desire for a federal forum as forum shopping because that right is provided by the
3   Constitution and statute. *First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 162
4   (9th Cir. 1997).

5   Here, there is no indication that GEICO did anything other than exercise its choice
6   as the plaintiff to file in the forum it prefers. Tucker references GEICO's litigation tactics
7   in a different case, but that does not establish that it is forum shopping in this case. If this
8   Court were to decline jurisdiction, Tucker has indicated an intent to file a declaratory
9   action in state court. It is no more forum shopping for GEICO to file in federal court than
10  it is for Tucker to ask for this case to be dismissed so that he can file in state court. The
11  second *Brillhart* factor also does not favor dismissal because GEICO's action was not
12  reactive to a state court proceedings and it is not shopping for a different forum with this
13  action.

### 3. Duplicative Litigation

15  "If there are parallel state proceedings involving the same issues and parties
16  pending at the time the federal declaratory action is filed, there is a presumption that the
17  entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225 (citing *Chamberlain v.*
18  *Allstate Ins. Co.*, 931 F.2d 1361, 1366–67 (9th Cir. 1991)).

19  As discussed above, there is no pending state litigation, only Tucker's desire to
20  have GEICO's complaint in this matter dismissed so that he can file his own action in
21  state court. Also there are no other claims or issues that would end up needing to be
22  resolved in a separate action. The only issue in this case or the one that Tucker intends to
23  file is a declaration of coverage under the policy. Thus, this factor does not favor
24  dismissal.

### 4. Other Factors

26  None of the additional factors mentioned in *Dizol* for determining whether to
27  exercise jurisdiction outweigh the three *Brillhart* factors that weigh against dismissal
28  here. This action will settle all aspects of the controversy and will also clarify the legal

relations between the parties because the coverage of the policy is the only dispute. Neither party has engaged in procedural fencing. There is no issue with entanglement between the court systems because there is no other case pending. The convenience to the parties and remedies available are the same.

For all of these reasons, the Court will not grant the Motion to Dismiss by exercising its discretion not to hear this matter under the FDJA.

## II.     Offensive Collateral Estoppel

Tucker next argues that the case should be dismissed with prejudice through an application of non-mutual offensive collateral estoppel. He argues that GEICO already defended and lost the argument it is making here against a different party in an unpublished Arizona Court of Appeals opinion.

"In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir. 1994).   The offensive use of non-mutual collateral estoppel has historically not been permitted in Arizona. *See, e.g.*, *Spettigue v. Mahoney*, 8 Ariz. App. 281, 445 P.2d 557 (1968). The parties disagree about whether the Arizona Court of Appeals changed that in *Wetzel v. Arizona State Real Estate Department*. 151 Ariz. 330, 727 P.2d 825 (Ct. App. 1986). In that case the court recognized that offensive non-mutual collateral estoppel had not been permitted in the past but determined that it was "appropriate under the circumstances" in that case. *Id.* at 334, 727 P.2d at 829.

This case has not been fully embraced or recognized as broadly applicable by subsequent cases. The next year, the Arizona Court of Appeals itself described *Wetzel* as allowing that "[u]nder some circumstances the offensive use of the doctrine has been approved." *Gilbert v. Bd. of Med. Examiners of State of Ariz.*, 155 Ariz. 169, 175, 745 P.2d 617, 623 (Ct. App. 1987). Two year later, the Ninth Circuit noted that "[i]t may well be that Arizona courts are in the process of shifting" to allow the use of offensive use of non-mutual collateral estoppel, but the court did not determine "[w]hether this transition

has been completed or is still inchoate." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 519 (9th Cir. 1989). The Arizona Court of Appeals recently rejected the use of offensive use of non-mutual collateral estoppel against the state government, following the logic of the Supreme Court in *United States v. Mendoza*, 464 U.S. 154 (1984), that it cannot be used against the federal government. *First Interstate Bank of Arizona v. State Dep't of Revenue*, 185 Ariz. 433, 436, 916 P.2d 1149, 1152 (Ct. App. 1995) *abrogated on other grounds by Rogers Corp. v. State Dep't of Revenue*, 187 Ariz. 157, 927 P.2d 817 (Ct. App. 1996).

There are several reasons not to dismiss the case at this time on an estoppel basis. Although the parties both refer to this as offensive non-mutual collateral estoppel, it is not clear that the use here would be offensive because Tucker is raising it as the defendant. The traditional roles of plaintiff and defendant are somewhat less differentiated in a declaratory judgment act where both sides are essentially presenting arguments or "claims" for the Court to enter relief on their behalf by interpreting the coverage dispute in their favor. Further, while Tucker correctly notes that unpublished memorandum decisions may be cited for purposes of collateral estoppel under Arizona's state rules of court, that is only "for (1) the purpose of establishing the **defense** of . . . collateral estoppel." Ariz. R. Sup. Ct. 111(c) (emphasis added); Ariz. R. Civ. App. P. 28(c) (same).

Even if the parties had argued that this was a defensive use, it would not be appropriate to consider the estoppel issue in this Motion to Dismiss. The collateral estoppel argument is premised on facts outside of the pleadings, such as the argument that the language of the contract in the previous case is the same as in this case, and that the circumstances of the accidents and coverage in the two cases are not otherwise factually distinguishable. Absent specific exceptions, however, the Court will not consider evidence or documents beyond the complaint in the motions to dismiss or motions for judgment on the pleadings. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (amended decision). The Court declines to

convert this action to a motion for summary judgment, where it could solicit and consider additional evidence. The Motion to Dismiss will not be granted based on collateral estoppel.

### III.     Dismissal on the Merits

Finally, Tucker argues that dismissal is also proper on the merits of the anti-stacking issue. Whether this argument is construed as a motion under 12(c) for judgment on the pleadings, or a 12(b)(6) failure to state a claim, Tucker again invites the Court to consider factual evidence about the accident and coverage in this case and the previous case that led to the memorandum decision. For the reasons just explained, the Court declines to address the merits or facts of the case outside of the pleadings at this stage.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is denied.

Dated this 30th day of April, 2014.

*A. Murray Snow*
G. Murray Snow
United States District Judge